RECEIVED
JUL 12 2013
BY MAIL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>) <br>)<br>V. )<br>)<br>)<br>ALIREZA BAKHTIARI )<br>(Movant) )<br>) | Cause No. _____<br><br>Criminal Case No. 4:12-CR-97 |

### MOTION UNDER 28 U.S.C 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

1. petitioner inmate in pro se, Alireza Bakhtiari ("Bakhtiari") sets forth his first post-conviction motion in this brief.

2. Bakhtiari is an inmate (reg. no. 39383-044) in USP Marion.

3. Bakhtiari was indicted on March 2012 under 18 USC 875(c) (transmitting a threatening message on internet). This indictment was dismissed with prejudice on August 7, 2012. See Case No. 4:12-CR-97 in Eastern District of Missouri - St. Louis

4. Bakhtiari pled guilty to a superceding indictment under 18 USC 1512(c)2 on August 7, 2012.

5. Upon indictment in March 2012, Attorney Andrea Smith (#61446 MO) (715 West Rosehill Ave, Kirkwood MO 63122, 314-822-2735) was assigned by Hon. Buckles to represent Bakhtiari.

6. Hon. Buckles resided over bond and pretrial release hearings.

7. Hon. Adleman resided over pretrial discovery matters.

8. Hon. Webber resided over entry of plea and sentencing hearings.

9. Amongst the residing judges, only Hon. Adelman allowed hybrid (pro Se - counsel) combination in representation, only limited to discovery issues. Hon. Buckles and Hon. Webber expressly denied hybrid representation in their own courts.

10. On November 19, 2012 Bakhtiari was sentenced to 51 months custody

Bakhtiari-2255-page 1

and 3 years of supervised release and was taken into custody same day.

11. Attorney Smith (Assigned defense attorney ("Smith")) withdrew the day of sentencing, but at the end of sentencing was assigned again to represent Bakhtiari at appellate proceedings before the 8th Circuit.

12. The 8th Circuit affirmed the 51 months sentence (No. 12-3813).

13. Bakhtiari has not filed for certiorari before the United States Supreme Court.

14. Other than the foregoing Bakhtiari has not filed any post-conviction motions.

15. Bakhtiari raises seven (7) grounds in this motion. None of these issues (factual or legal) have been litigated previously, or raised on appeal.

## Timeliness

16. This motion is timely per 28 USC 2255 (f)(1), which provides one year limitation for filing such motion.

17. Simultaneous with this motion, Bakhtiari files a motion and affidavit to proceed In Forma Pauperis in Habeas case.

18. Bakhtiari has no other motions or appeals currently pending.

### Factual and Procedural Background Common to all Grounds

Bakhtiari began working as an adjunct faculty in a St. Louis College on or about Nov-2008. He was terminated on March-2009 in a Title VII retaliation setting. He sued and Attorney B.H. (representing the civil defendant college) immediatly approached Bakhtiari urging and pleading for an early settlement. Bakhtiari conceded and settled.

Mid 2010, Bakhtiari provided information to Missouri state prosecutors which led to conviction and imprisonment of the husband of the college's program chair (Ms. Patricia Leader Frank Al-Khaledy ("Leader")). Immediatly after, the college published defamatory

**letters** (surface mail) libelling Bakhtiari. Bakhtiari sued again. And B.H. appeared crying for early settlement again to protect his college client from discovery. In good faith Bakhtiari conceded a and settled.

In 2011 Leader's husband who was convicted and imprisoned as a result of Bakhtiari's information, left Leader. Immediatly after his departure, college's defamatory publications surfaced again. Bakhtiari sued again. B.H. came, hat in his hand, for early settlement. Bakhtiari stricktly denied and adamantly asked the Court for a thorough discovery which if would have been done back in 2009, the college would not have trasngressed so grosely in 2010 and 2011.

In execution of a civil discovery order, G.F (B.H 's law partner) visited Bakhtiari's house in St. Louis. G.F. took up his law partner's cause and urged their usual quick fix - ealy settlement. He stated to Bakhtiari that his refusal to settle will result in a criminal prosecution. Bakhtiari ignored the comment and urged continuation of a thorough discovery for both civil parties.

G.F 's promise came true. In March 2012 Bakhtiari was indicted for threatening B.H on email (18 USC 875(C)). Bakhtiari was assigned a counsel by the Court (Smith). Bakhtiari requested the Court for discovery issues (Hon. Adleman) to allow him proceed in a hybrid pro se-counsel combination so Bakhtiari could assist Smith in the technical computer issues of the discovery. Hon. Adleman allowed hybrid proceeding only limited to his own court. Hon. Buckles and Hon. Webber stricktly denied hybrid in their courts.

Bakhtiari delivered 3 notices of alibi, informing the Government's counsel (prosecutor John Dean Sauer)("Sauer") that he has three witnesses that witnessed him'joining him in his mother in-law's house for dinner and attend a St. Louis Cardinal's event through out the day. Bakhtiari introduced his allibi to Sauer.

Immediatly after the notice of allibi, Sauer informed Bakhtiari that he wished to dismiss his indictment (18 USC 875(C)). Sauer set forth a causation theory instead. He alleged that by leaving his legal files pertaining the civil suits on his work computer, Bakhtiari has caused the email threat to come about. Sauer suggested such causation theory and thus a plea of guilty to 18 USC 1512(c)(2) ("Obstructing an official proceeding").

Bakhtiari agreed. Sauer drafted the plea document. In the factual stipulation of the plea agreement Sauer set forth his email causation language clearly ("...Bakhtiari caused the email..."). He also set forth speculative facts about how the email could have been step by step prepared. Sauer set forth these facts in passive-voice since he conceded he could not attribute them to any known subject. (e.g. pictures were doctored, email was written, email account was created, email was sent...).

On August 7, 2012 Bakhtiari pled guilty to 18 USC 1512(C)(2) and the specific colloquy of the factual stipulation was read aloud in Hon. Webber's courtroom. Bakhtiari was set for Nov/19/12 for sentencing before Hon. Webber to be represented by Smith.

While awaiting sentencing, the local paper (St. Louis Post Dispatch) asked for comment. Bakhtiari conveyed what the factual stipulation of the plea actually says. Causing the email is tottaly different than sending it; hence dismissal of 18USC875(c) and replacing it with 18USC1512(c)(2), and hence what the plea colloquy actually says.

On the evening of Nov/18/2012, hours prior to the sentencing, Smith (defense counsel) called Bakhtiari and infomred him that she had had a friend-author in town on a book signing tour and she has been entertaining guest, not being able to prepare for the sentencing.

Smith asked Bakhtiari to **take-over** at sentencing!

Smith informed Bakhtiari that an option for an immediate continuance was not avaialble. Bakhtiari's main character witness (his co-evangelist) Mr. Salazar was terminally ill. There was high likelihood that Salazar would not survive to testify at a continued date. In fact Salazar died shortly after the Nov/19/2012 sentencing.

Being abandoned by his counsel (Smith) and buttressed by the eminent death of his witness, had no options and was forced to proceed in pro se at the sentencing.

Hon. Webber was angered at the surprise of having to face a pro se defendant at sentencing and expressed his anger and frustration many times throughout the hearing.

The government took a completly new aproach at sentencing, claiming that causing the email be sent is the same as sending the email. Sauer completely ignored his own email causation theory and the colloquy and language of the plea agreement which he had drafted himself. The government asked for a +8 enhancemnt for physically threatening B.H and +2 enhancement for extended planning and denied the acceptance of responsibility (-3) to Bakhtiari.

At sentencing Bakhtiari argued that the facts and elements needed for these enhancements were not proven to the Court, were not found by a jury and did not exist in the plea agreement. The facts and elements needed for such enhancements did not exist in the indictment and were not pled to by Bakhtiari and were not found in the factual stipulation of the plea. Hon. Webber denied Bakhtiari's arguments and proceeded by Judge-found (in this case more Judge speculated) facts to impose +8 and +2 enhancements upon Bakhtiari's sentence.

Bakhtiari had pled guilty to 18 USC 1512(c)(2) with the base

offense level of 14. Relying on facts not found by the jury, not alleged in the indictment and not existing in the plea agreement, Bakhtiari's offense level was increased to 24. He was sentenced to 51 months in custody and three years supervised release and was taken into custody the same day.

Other than the case at hand, Bakhtiari has no criminal history.

## Ground One

### Alleyne v. US, 570 U.S. 2013

In a recent decision (June 17, 2013) the Supreme Court ruled expressly on the very argument that Bakhtiari made at his sentencing. Alleyne was sentenced and his sentence was enhanced based on facts found by the District Judge and not by the jury. Such sentence is unconstitutional per 6th amendment to the constitution. If any fact is being used to sentence a defendant or to enhance his sentence, it **must** be found by a jury or **must** found in the plea agreement(pled by defendant himself).

Any fact that is used or needed for enhancement is an element of the crime. Such fact cannot be Judge-found. Absent finding by a jury it can only come from the factual stipulation of the plea.

In Alleyne, Justice Thomas wrote for the majority:

> "Any fact that, by law, increases the penaltyfor for a crime is an "element" that must be submitted to the jury and found beyond reasonable doubt."

See **Apprendi v, New Jeresy** 530 U.S. 466 (2000), See also **Alleyne v. US** 570 U.S. 2013 (Slip op. page 1).

The 6th amendment and the jurisprudence of due process both demand the sentencing court to draw the sentencing facts from the jury or plea agreement, speculative facts cannot be used to sentence or enhance sentencing of a criminal defendant See **US v. Gaudin** 515 U.S. 506, 510 (1995), See also **In re Winship** 397 U.S. 358, 364 (1970).

If a fact increases the punishment then is an "ingredient" or "element" of the crime and therfore it must come from jury-findings or from the pleading of defendant himself. See US v. O'Brien 560 U.S. 218 (2010); Apprendi at 483; See Pleading and Evidence in Criminal Cases 52 (5th Am. ed. 1846)

Justice Thomas ruled in Appprendi once before that if a fact was by law essential to the penalty, it was a an element of the offense, See Apprendi at 511-512.

In fact it is the essence of 6th amendment jurisprudence that any fact which increases the punishment must be charged in the indictment and have a source in jury findings. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury, and found beyond reasonable doubt.

Alleyne's sentence (mandatory minimum) without the weapon brandshed would be 5 years and with weapon brandished would be 7 years. The jury never found that Alleyne ever brandished his weapon, the district judge proceeded with his own findings and concluded that Alleyne had brandished the weapon. The Supreme Court expressly deemed such sentencing unconstitutional (See Alleyne slip op. page 17).

On the same issue Justice Breyer opined that:

> "...in both instances fact-finding would trigger the increase; in both instances jury-based-fact-finding would act as a check;..."

See Alleyne, Slip op. J. Breyer's concurring opinion, page 3.

In the case at hand, Bakhtiari never admitted or pled that he transmitted the email threat (he pled to causing it but not authoring or sending it). Such fact was not alleged in the indictment, was

not found by a jury but was speculated (or maybe found) by Hon. Webber. Alleyne and Apprendi both deem such sentence unconstitutional.

Same is applicable to the fact which the court used or needed to establish extended planning (taking pictures of B.H.'s house, doctoring the pictures of his children, authoring the menacing email, creating an email account, go to the Super 8 motel in Pevely-Missouri and sending the email). Bakhtiari never pled to such facts, a jury never found as such and they were merely asserted in the plea agreement language in passive-voice and Hon. Webber speculated that Bakhtiari is responsible for or the doer of the actions. According to Apprendi and Alleyne, enhancing Bakhtiari's sentence using such speculations or judge-findings is unconstitutional.

### Ground Two

**Whitmore v. Avery 179 F.R.D. 252; 1997 U.S. Dist. LEXIS 22581**

In Whitmore, in relevant parts, Magistrate Judge Piester narrates the events as follows:

> "... (Whitemore)'s retained counsel withdrew from representing him only a few days before trial, claiming that Whitmore did not pay him enough money. (Whitmore) scrambled to hire substotute trial counsel, but none of the attorneys he approached would take his case. The trial judge, even though he was made aware of (Whitmore)'s unsuccessful attempts to find a substitute lawyer, refused (Whitmore)'s request for continuance to do so. (Whitmore) was represented at trial by a lawyer who was at that time representing his co-defendant." See **Whitmore** at **page 263.**

Judge Piester continues to call such events <u>extra-ordinary,</u> <u>exceptional</u>, and states that these events have prevented Whitmore

Bakhtiari-2255-page 8

from being fully heard. See Whitmore at 264.

Hon. Heaney of the 8th circuit stated about Whitmore expereince:

> "Randall Whitmore was not served well by the Nebraska bar in this case...Again and again Whitmore's various counsel have fallen below acceptable levels of representation in their work on his behalf...In my veiw justice has not been served." See Whitmore at 264.

Whitmore had a counsel at trial, his counsel withdrew few days prior to the trial and he had a chance to find replacement, who failed to pay attention to the conflict of interest existing. Still his circumctances were called extra-ordinary, exceptional and <u>unjust</u>. Bakhtiari's case is even more dire. Smith (Bakhtiari's counsel) withdrew hours prior to the sentencing. Bakhtiari was not even granted a continuance. He was told by Smith and prosecutor Sauer that an immediate continuance (one which would accomodate the terminally ill Salazar) would not be available. Facing eminent death of his main witness, at the most critical point of his criminal proceedings (sentencing.) Bakhtiari was forced to do it alone, in pro se. If Whitmore's case is exceptional, then Bakhtiari's definitly is. Bakhtiari has been certainly disserved and abandoned by his counsel.

Impropper or inadequate work of the counsel is veiwed by a two pronged test: 1)Professionally unreasonable conduct by the counsel 2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. See Strickland v, Washington 466 U.S. 691, 694 104 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having

produced a just result. See Strickland at 686.

Had Smith not abandoned her client hours prior to the sentencing, the entire outcome of sentencing would have been different.

### Ground Three

**11th Merriam Webster Dictionary: Cause=An agent that brings something about.**

Prosecutor Sauer used intentionally questionable language in drafting the plea agreement (wording the causation theory and asserting the facts in passive-voice). Sauer clearly intended and calculated to abuse and mis-represent such language at a later time. Smith should have foreseen and prevented Sauer's backhanded attempt. It was ineffective and inadequate work on Smith's part to allow such language in the plea. The constitution requires that a defendant's plea be made knowingly, intelligently and voluntarily. **See Brady v. US, 397 U.S. 742, 750 (1970).** Here it was not.

Came to sentencing, Sauer changed his interpretation and reading of his dual-sided language as he had written earlier.

Had Smith not abandoned her client, the sentencing court would have realized this under-handed effort of Sauer.

### Ground Four

US v. Goebel, 898 F. 2d 675 (8th circuit 1990)

In Goebel, Hon. Wilkins, then Chairperson of the Sentencing Commission ruled as follows:

> "...Whether role in the offense adjustments are warranted is to be determined not only by comparing the acts of each

participant in relation to the relevant conduct of which the participant is held accountable (See U.S.S.G 1B1.3),but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction." **See Goebel at 677, see also US v. Doughtry 874 F 2d 213, 216 (4th Cir. 1989).** Judge Wilkins goes on to say that this is an objective standard, involving a defendant's degree of participation in the offense.

Bakhtiari was entitled, planned and prepared with his counsel to move for downward departure based on his minor (if not minimal) role in the offense (bringing about obstruction of justice). He also had prepared for motion for downward variance based on his assistance to the state and federal prosecutors. Was he not abandoned by his counsel, Bakhtiari would have been able to assert his meritorious downward departure motions.

The plea agreement only attributes a very limited action to Bakhtiari. Bakhtiari investigated B.H. in the context of his civil suit. B.H.'s blind devotion to quick settlement simply looked too odd. Bakhtiari browsed the pictures of B.H's son's wedding on internet. This is the end of the actions which the plea agreement language (colloquy) attributes to Bakhtiari as a participant. The rest of the acts (conducts) such as doctoring the pictures, writing the menacing email, creating an email account, travelling to super 8 motel and sending the email are not and cannot be attributed to Bakhtiari. Sauer lists such speculative steps in passive voice. In the series of tentative and speculative actions that were taken to send the email, Bakhtiari's role in minimal. Sauer's language in the plea agreemnt does not say if Bakhtiari caused the email intentionally or unintentionally.

Bakhtiari has a meritorous motion under U.S.S.G 1B1.3 and should get the chance to assert his motion. Smith abandoned her client and Bakhtiari could not assert his motions.

### Ground Five

On the eve of sentencing (Nov/18/12) Bakhtiari was informed by Smith that an eminent continuance was not available. Smith knew that Salazar was terminally ill. Smith did not pursue a proper and immediate continuance date on her client's behalf, so Bakhtiari could look for replacement counsel. Or possibly allow Smith to recover from her book signing tour and appear for sentencing.

It was ineffective, improper and inadequate work of counsel on Smith's part, not to pursue a continuance date.

In addition to Smith, Sauer stated that since the sentencing was in November, close to thanks-giving and right prior to the holiday season, he would not consent to an immediate sentencing date, one at which Salazar could be present.

An effective counsel would not have withdrawn, even if deciding to withdraw, would have secured an immediate date for her client.

### Ground Six

At the time of sentencing, the prosecutor and Hon. Webber insisted several times that Bakhtiari should articulate and express remorse for sending a threatening email to B.H. This is in clear and direct contradiction to what the plea language says. Expecting Bakhtiari to express remorse for sending the email flies in the face of the plea colloquy and contradicts the essence of dismissal of 18 USC 875(c) and replacing it with 18 USC 1512(c)(2).

Bakhtiari repeatedly said at sentencing that he was sorry and shameful for having "obstructed justice", indeed Bakhtiari did plead guilty to 18 USC 1512(c)(2) and he is and will be always ashamed for having caused obstruction of justice. But 18 USC 875(c) had been dismissed and Bakhtiari was not required or supposed to express remorse for sending any email. It was unreasonable to expect Bakhtiari to express remorse for the facts not pled to and admitted upon in the plea agreement.

Had Bakhtiari not been abandoned by Smith, the outcome of such issue would have been entirely different. Smith must have explained to the court how she came up to the agreed upon language of the factual stipulation of the plea agreement. At sentencng when she was needed to defend the strict language of the pla agreement, Smith abandoned Bakhtiari.

Absent Smith's inadequate, improper and ineffective work as counsel, the outcome of such issue would have been entirly differrent and Bakhtiari would not have been denied acceptance of responsibility (-3 level).

### Ground Seven

Both the lower court and the 8th circuit are in clear factual errors pertaning the facts on the record. Smith performed ineffectivly, improperly and inadequatly before the district court and the 8th circuit. Some of the clear factual errors are as follows:
- The 8th circuit is clearly mistaken about the civil suits which gave rise to the criminal case at hand. They were not based on defamatory emails, but letters on surface-mail (See Appellate opinion page 2).

- Sauer maintains that Bakhtiari's cell phone hit the tower close to the super 8 motel in the night of issuance of the email. Bakhtiari has produced three witnesses that were with Bakhtiari at a dinner outside Festus-Missouri at the time. Both these locations hit the same cell-phone tower. Both courts ignored half of the existing record. (See Appellate opinion, page 3).

- According to the plea document, if the civil discovery would have continued, it would have been revealed that defendant (civil defendant Leader) had forged the college letterheads to retaliate against Bakhtiari for proving information to the prosecutors against her husband and for her husband leaving her. There is not a **single** place in the pla language stating that Bakhtiari pled to forging any documents. (See Appellate Opinion, Page 3 ).

- Bakhtiari never swore that he fabricated "torture" allegations, Bakhtiari and Sauer agreed to use the term "in-accurate" in the plea language, which Sauer switched at a later date.(See Appellat opinion page 3).

- Bakhtiari is the whistle-blower in chlorine poisoning cases and not "elevated chlorine" instances (App. Op. page 4).

- Bakhtiari never admitted or pled to taking pictures of B.H's house, doctoring pictures of his children, writing a menacing email, creating an email account and or sending the email. The plea colloquy states these facts in passive-voice and expresses that the subject of these actions is unknown. (App. Op. pg 5).

- Bakhtiari never admitted or pled to sending the email, **causing the email** and **sending it** are   distinct actions (App. Op. pg. 7).

   Smth abandoned her client at sentencing, these facts were not set clearly before Hon. Webber at sentencing and were not

set clearly before the 8th circuit. Smith's performance was ineffective, inadequate and improper and it substantially affected the outcome of sentencing and its appeal.

### Evidentiary Hearing

Defendant is entitled to releif due to the substantial factual and constitutional issues posed in this motion. It would serve justice if Bakhtiari is granted an evidentiary hearing per 28 U.S.C 2255(b).

### Prayer for Relief

By reasons set forth in the foregoing, Petitioner Bakhtiari requests that this Honorable Court vacate his sentence of 51 months in the interests of justice.

### VERIFICATION

I, Alireza Bakhtiari, knowing the penalty of perjury, being of legal age and sound mind, submit the foregoing to be correct, true and accurate.

**Respectfully Submitted,**

Alireza Bakhtiari
39383-044
PO Box 1000
Marion IL 62959

Petitioner in Pro Se