UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALIREZA BAKHTIARI, | ) | |
| Movant, | ) ) ) | |
| v. | ) | No. 4:13CV01344 ERW |
| UNITED STATE OF AMERICA, | ) ) ) | |
| Respondent. | ) | |

# **AMENDED MEMORANDUM AND ORDER**[1]

This matter comes before the Court on Movant Alireza Bakhtiari's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1].

**I.  BACKGROUND**

This case arises out of a threatening email, which was sent to an attorney in an effort to chill his involvement in a separate civil lawsuit.  On March 14, 2012, Movant was indicted with one count of knowingly transmitting in interstate commerce a threat to injure the person of another in violation of 18 U.S.C. § 875(c) (Count I).[2]  On August 7, 2012, the United States filed a superseding information, restating Count I of the indictment and adding a second count, charging Movant with corruptly attempting to obstruct, influence, and impede an official proceeding in violation of 18 U.S.C. § 1512(c)(2) (Count II).  On the same date, Movant entered a Guilty Plea Agreement (GPA) with the United States pursuant to Federal Rule of Criminal

---

[1] On March 24, 2014, the Eighth Circuit remanded this case, "for consideration in light of *Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997), with directions that if granted, the certificate of appealability specify the issue or issues that are to be considered on appeal."  In Section IV, *infra*, the Court addresses whether a certificate of appealability should issue in this case.  With the exception of Section IV, this Amended Memorandum and Order is identical to the Court's Memorandum and Order dated March 13, 2014 [ECF No. 20].

[2] The underlying criminal case has a CM/ECF number of 4:12CR00097 ERW-1.

Procedure 11(c)(1)(A). In the GPA, Movant agreed to plead guilty to Count II of the superseding information in exchange for the dismissal of Count I.

On November 19, 2012, the Court held a Sentencing Hearing (Hearing). At the outset of the Hearing, Movant's counsel, Andrea Smith, moved for withdrawal, and for her appointment as stand-by counsel. Movant, in response to his counsel's motion to withdraw, stated, "If I may also, I assert the same motion as *pro se*." [ECF No. 9-1 at 4:7-8]. He explained the magistrate judge had allowed him to act *pro se*. Before the Court made any rulings, Movant stated, "Ms. Smith will not be leaving the courtroom, and I will definitely utilize her existence and her services if need be[.]" [ECF No. 9-1 at 5:2-4]. The Court admonished Movant not to proceed *pro se*, stating,

> Even the most highly trained lawyers have difficulty negotiating the United States Sentencing Guidelines. Experience that I have teaches me that every time someone represents or tries to represent themselves, the following happens: They find it very awkward to proceed in asking themselves questions on the stand and answering the questions. If I allow narrative testimony, it frequently is interrupted. If you are unsuccessful today in your representation of yourself, it always results in extensive hearings later because you will claim you didn't have effective assistance of counsel. If you are unsuccessful, then on appeal you may be forfeiting some of your rights. If you say things in court, it can be used against you as an admission, where it would not be with your lawyer.
>
> Everything I know, over thirty years of doing this, suggests that anyone who represents themselves set[s] themselves up for failure, disappointment, disillusionment. They leave the court thinking they were being treated unfairly because the judge was unfair with them. I am here to give two people a fair trial, the United States of America and you. I don't take sides. I don't help you. I'm not going to get involved in representing you today. All of those things mitigate against doing what you want to do.
>
> Now, having said that, you do have certain constitutional rights that permit you to do that. I think it's a mistake, I think you're making a big error, and I want to make sure you understand all of those things before I rule on your motion.

[ECF No. 9-1 at 6:6-7:8]. Movant acknowledged he was "fully aware of the perils and the pitfalls of self-representation." [ECF No. 9-1 at 7:9-10]. The Court then asked Movant if it was

his understanding Ms. Smith would not be terminated in representing Movant, but would remain available to him upon his request. Movant responded, "If she wishes to stay, I would welcome her assistance at times, yes, Your Honor." [ECF No. 9-1 at 8:6-7]. Ms. Smith agreed to remain. The Court announced Movant would be proceeding *pro se* and Ms. Smith would remain solely for the purpose of helping him.

After hearing evidence from both Movant and the United States, the Court calculated Movant's sentence under the United States Sentencing Guidelines. The base level for the offense was 14 and two enhancements were applied: an eight-level enhancement for threatening to cause physical injury to a person in order to obstruct justice under United States Sentencing Guideline § 2J1.2(b)(1)(B), and a two-level enhancement for extensiveness in scope, planning, and preparation under United States Sentencing Guideline § 2J1.2(b)(3)(C). The resulting offense level was 24, with a corresponding advisory sentencing range of 51 to 63 months. Ultimately, the Court imposed a sentence of 51 months' imprisonment, with three years of supervised release. At the close of the Sentencing Hearing, Movant referred to Ms. Smith as "great counsel," and asked the Court to reinstate her as counsel for filing a notice of appeal. [ECF No. 9-1 at 160-61]. Ms. Smith filed an appeal on Movant's behalf, challenging the sentence he received, and she continued to represent Movant throughout his appeal. On May 8, 2013, the Court of Appeals affirmed Movant's sentence. *U.S. v. Bakhtiari*, 714 F.3d 1057 (8th Cir. 2013).

On July 12, 2013, Movant filed the pending *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. In his Motion, Movant challenges his sentence on seven grounds. First, Movant asserts the Court sentenced him using sentence-enhancing facts neither included in the GPA, nor found by a jury, thereby violating his

rights under the Sixth Amendment of the United States Constitution. Movant's second through seventh grounds for relief contend he received ineffective assistance of counsel.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may move the court to vacate, set aside, or correct a sentence on grounds "the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" To obtain relief under § 2255, the movant must establish a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *U.S. v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003).

Procedural default may limit a movant's relief under § 2255. Specifically, a movant "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. U.S.*, 25 F.3d 704, 706 (8th Cir. 1994) (citing *Belford v. U.S.*, 975 F.2d 310, 313 (7th Cir. 1992)). To overcome this default, the movant must demonstrate either "(1) cause for the default and actual prejudice or (2) actual innocence." *U.S. v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001); *Smith v. U.S.*, 256 Fed. Appx. 850, 852 (8th Cir. 2007).

A movant may, however, raise for the first time an ineffective assistance of counsel claim in a § 2255 motion, regardless of the feasibility of such a claim on direct appeal. *Massaro v. U.S.*, 538 U.S. 500, 504 (2003); *U.S. v. Brown*, 539 F.3d 835, 842 (8th Cir. 2008). This exception to the general procedural default rule exists to prevent movants from having "to raise the issue before there has been an opportunity to fully develop the factual predicate for the claim." *Massaro*, 538 U.S. at 504. Furthermore, a movant's attorney may serve as counsel both

at the trial and appellate levels of the case, and it is unlikely that the attorney would assert his own ineffective assistance on appeal. *See U.S. v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003). Thus, demonstrating ineffective assistance of counsel will normally satisfy the cause for default and actual prejudice requirements necessary to raise a constitutional issue for the first time in a § 2255 motion. *U.S. v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

If a movant is not procedurally barred from bringing a § 2255 motion, the court must hold an evidentiary hearing to consider the claims made therein "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. U.S.*, 24 F.3d 1040, 1043 (8th Cir. 1994). Thus, the Court must conduct an evidentiary hearing when "the facts alleged, if true, would entitle [the movant] to relief." *Payne v. U.S.*, 78 F.3d 343, 347 (8th Cir. 1996). In contrast, a court may dismiss a claim without an evidentiary hearing, if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Tinajero-Ortiz v. U.S.*, 635 F.3d 1100, 1105 (8th Cir. 2011).

## III. DISCUSSION

Movant asserts seven grounds for relief. First, he contends, in enhancing the advisory sentencing range, the Court used facts neither included in the GPA, nor found by a jury, thereby violating his Sixth Amendment rights. In his second through seventh grounds for relief, Movant claims he received ineffective assistance of counsel at the Hearing. The United States responds the Court used sentence-enhancing facts supported by sufficient evidence to meet the requisite preponderance of the evidence standard. The United States also argues Movant has failed to show he received ineffective assistance of counsel, and the record contradicts Movant's claim

Ms. Smith abandoned him at the Sentencing Hearing.

### A. *Finding of Sentence-Enhancing Facts*

Movant argues the Court used sentence-enhancing facts neither included in the GPA, nor found by a jury, thereby violating his Sixth Amendment right to a trial by jury. Specifically, Movant claims he never admitted to transmitting the email, only to "caus[ing] an anonymous email to be sent[.]" [Criminal Docket ECF No. 88 at 3-4]. Movant contends the Court "speculated" as to the sentence-enhancing facts.

As an initial matter, Movant's claim has been procedurally defaulted, because he could have raised it in his direct appeal, but failed to do so. *Anderson*, 25 F.3d at 706. To overcome this default Movant must demonstrate either "(1) cause for the default and actual prejudice or (2) actual innocence." *Moss*, 252 F.3d at 1001. In an attempt to establish cause, Movant argues his present argument relies on a case, *Alleyne v. United States*, 133 S. Ct. 2151 (2013), decided after his direct appeal. This argument lacks merit. Although the Supreme Court has held "that a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for procedural default, . . . [Movant's] claim does not qualify as such." *Bousley v. U.S.*, 523 U.S. 614, 622 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). That is, in his Motion, Movant essentially argues the Court applied the incorrect standard of proof when finding sentence-enhancing facts; this can hardly be considered "novel." Additionally, Movant's direct appeal was submitted April 11, 2013 – nearly four months after *Alleyne* was argued before the Supreme Court.

Movant's first ground for relief would fail even if it was not procedurally defaulted, because *Alleyne* is inapposite. In *Alleyne*, the defendant was convicted of several federal offenses, including using a firearm in relation to a crime of violence. 133 S. Ct. at 2155.

Pursuant to 18 U.S.C. § 924(c)(1)(A), this crime carries a mandatory minimum sentence of not less than five years' imprisonment; if the firearm is brandished, the mandatory minimum sentence is seven years' imprisonment. A jury convicted the defendant of using a firearm in relation to a crime of violence, but did not find the firearm had been brandished. *Alleyne*, 133 S. Ct. at 2156. The presentence report recommended a seven-year sentence, reflecting the mandatory minimum for brandishing a firearm in relation to a crime of violence. *Id.* The defendant objected, arguing the jury did not find he brandished a firearm beyond a reasonable doubt, and imposing a mandatory minimum above five years would violate his Sixth Amendment right to a trial by jury. *Id.* The district court rejected the defendant's argument, citing *Harris v. United States*, 536 U.S. 545 (2002), which held "judicial factfinding that increased the mandatory minimum did not implicate the Sixth Amendment." *Alleyne*, 133 S. Ct. at 2157 (discussing *Harris*, 536 U.S. at 557).

On appeal, the Supreme Court overruled *Harris*, stating, "Facts that increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2158. However, the Supreme Court also noted this holding "does not mean that any fact that influences judicial discretion must be found by a jury." *Id.* at 2163. The Court explained its "decision . . . is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law." *Id.*

*Alleyne* does not apply to the instant case, because the sentence-enhancing facts at issue did not increase a mandatory minimum sentence; rather, they fell within the "broad discretion of the [Court] to select a sentence within the range authorized by law." *Id.* In the GPA, Movant admitted to all elements of his offense, which, unlike the offense in *Alleyne*, has no mandatory minimum sentence. 18 U.S.C. § 1512(c). Because the Court did not find facts resulting in an

offense differing from the one admitted in the GPA, *Alleyne* does not apply.

Nor did the Court "speculate" in finding the sentence-enhancing facts. The Court need only find sentence-enhancing facts by a preponderance of the evidence, *U.S. v. Pirani*, 406 F.3d 543, 551 n.4 (8th Cir. 2005), and this burden was clearly met. As the Eighth Circuit found on direct appeal, the enhancements under Guidelines §§ 2J1.2(b)(1)(B) and 2J1.2(b)(3)(C) were correctly applied. *Bakhtiari*, 714 F.3d at 1061-62. At the Hearing, the United States presented several witnesses. One witness, B.H., testified he received a threatening email from Movant; he also described the effect the email had upon him and his family. In essence, B.H. testified the email and attached pictures threatened physical harm to his family, if he did not chill his advocacy against Movant in an ongoing civil suit. Additionally, Movant admitted in the Guilty Plea Agreement to causing the email "to be sent in an attempt to retaliate against and intimidate B.H. for his actions in the civil lawsuit[.]" G. F., a colleague of B.H., also testified, describing an incident several days after the receipt of the email. Specifically, G.F. stated Movant showed him a loaded rifle, referred to the rifle's scope as "cross hairs" and offered him a bullet removed from the rifle's chamber. In the GPA, Movant admitted to displaying the loaded rifle to G.F. with an "improper purpose," and with the intent to "subvert, impede or obstruct the official proceeding." In light of this testimony and the GPA, sufficient evidence existed to conclude Movant's conduct involved threatening physical injury to a person in order to obstruct justice by a preponderance of the evidence.

In addition, the GPA itself supports a finding of extensive scope, planning, and preparation. Movant admitted to downloading photographs of B.H.'s son and daughter-in-law from a wedding photographer's website. The email contained edited versions of the pictures of B. H.'s son and daughter-in-law, as well as pictures of B.H's house and an individual labeled as

B.H's daughter. It was sent from a wireless router at a motel in an apparent attempt to conceal its origin. In sum, the Court finds no difficulty in concluding the sentence-enhancing factors were supported by a preponderance of the evidence.

Accordingly, Movant's first ground for relief is denied.

### B. *Ineffective Assistance of Counsel*

In his second through seventh grounds of relief, Movant asserts he was denied effective assistance of counsel. In order to demonstrate ineffective assistance of counsel, Movant must show "(1) that the attorney's performance was deficient, falling below professional standards of competence; and (2) that the deficient performance prejudiced the defense." *U.S. v. White*, 341 F.3d 673, 677 (8th Cir. 2003) (internal quotations omitted). Both prongs of the test must be satisfied for the claim to succeed, and when a movant fails to make a sufficient showing under one prong, the court need not address the other. *Strickland v. Washington*, 466 U.S. 668, 697 (1987); *Fields v. U.S.*, 201 F.3d 1025, 1027 (8th Cir. 2000). Movant bears the burden of proving counsel's performance was unreasonable, considering all circumstances. *Strickland*, 466 U.S. at 697. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

1. Deficient Performance

The majority of Movant's remaining grounds of relief are premised on the assumption that Ms. Smith "abandoned" him at the Sentencing Hearing – a notion undisputedly refuted by the record. While Ms. Smith moved to withdraw as counsel at the beginning of the Hearing, Movant promptly followed suit with his own motion to proceed *pro se*. Movant did not claim, or even imply, he was being abandoned by Ms. Smith. Nor did he in any way indicate he felt forced to proceed *pro se*. Instead, he stated he could better represent himself, due to the

extensiveness of the facts involved regarding the related civil lawsuits. Movant did not express a desire for a continuance to seek alternate counsel. The Court warned Movant of the risks of proceeding *pro se*, urged him to reconsider his choice, and advised his rights would be better protected by utilizing counsel. Notwithstanding these admonitions, Movant insisted on exercising his Sixth Amendment right to proceed *pro se*; he expressly stated,

> Your Honor, I am fully aware of the perils and the pitfalls of self-representation. Throughout years I've come to the absolute faith through an old saying that an attorney who represents himself has a fool for a client. A *pro se* who represents himself, a layman *pro se* who represents himself, has a double fool for a client. I'm fully aware of that.
>
> But having to choose between the lesser of the two evils, I think it would serve me the best if I proceed in *pro se*, and on the record I acknowledge that I fully am aware of the perils and the downfalls of self-representation. And I do not intend to take this stand as a fact witness in this case. It is my constitutional right to avoid that, and I do assert that right, Your Honor.

[ECF No. 9-1 at 7:9-22].

After Movant asserted his right to proceed *pro se*, Ms. Smith remained present as standby counsel. At the end of the Hearing, Movant requested the Court reappoint Ms. Smith as counsel to file a Notice of Appeal on his behalf. In making this request, Movant added, "It was actually [Ms. Smith's] own idea, and she reoffered her services, and I graciously accepted. She's been a great counsel, and I'm grateful to her." [ECF No. 9-1 at 161:1-3]. The Court instructed Ms. Smith to file a Notice of Appeal, and she continued to represent Movant on his direct appeal.

Movant's remaining claims of deficient performance equally lack merit. For example, he claims Ms. Smith should have sought a continuance before she withdrew, to allow Movant time to find alternate counsel. The Court cannot conclude this conduct fell outside the "wide range of reasonably professional assistance." *Strickland*, 466 U.S. at 689. This is particularly true, because the record clearly establishes Movant desired to move forward *pro se*; notwithstanding

the Court's advice to seek counsel, Movant insisted on representing himself. Moreover, the Court is unable to reconcile this argument with Movant's assertion he was forced to go forward with the Hearing immediately, due to the imminent death of his key witness, Reverend Salazar. Regarding this latter argument, the record conclusively establishes Ms. Smith lacked any awareness of Reverend Salazar's illness at the time of the Hearing; an attorney's conduct must be evaluated from his or her perspective at the time of the conduct. *Strickland*, 466 U.S. at 689.

In addition, Movant claims Ms. Smith erred in failing to insist on alternate language in the Guilty Plea Agreement, which is largely crafted in the passive voice. Movant makes the conclusory allegation that this language was the result of an "under-handed effort" by the United States Attorney. [ECF No. 1 at 10]. Ms. Smith's affidavit, however, makes clear Movant insisted on using passive voice in the GPA, presumably so he could later deny responsibility for many of the events described therein. Regardless, the Court finds using passive voice in the GPA falls well within the "wide range of reasonable professional assistance[.]"[3] *Strickland*, 466 U.S. at 689.

  2.  Prejudice

Because Movant has failed to sufficiently allege deficient performance, the Court need not discuss prejudice. *Id.* at 697. The Court notes, however, in several of his ineffective assistance claims, Movant merely makes conclusory allegations of prejudice, without specifically

---

[3] In a related argument, Movant contends Ms. Smith was deficient for failing to pursue a downward departure due to his "minor" role in the offense based on the passive voice in the GPA. [ECF No. 1 at 11]. The Court does not agree, because, given the United States' ample evidence regarding the excessive scope of the offense, *see supra* Section III.A, it is clear declining to pursue this theory was reasonable.

explaining his claims.[4]  Likewise, he states the presence of counsel would have clarified many factual errors, on which the Court relied.  The record, however, fails to contain support for Movant's supposed factual errors, several of which are irrelevant to the outcome of the Hearing.  Moreover, the record makes clear Movant desired to proceed *pro se*, and intended to "soldier through" with his own strategy at the Hearing, rather than listening to the reasoned advice of counsel.  [ECF No. 9-2 at 9].  Movant has failed to show a reasonable probability of a different outcome had counsel been utilized, and he is not entitled to habeas relief.

### C. *Right to Evidentiary Hearing*

In sum, the Court concludes Movant's "allegations, accepted as true, would not entitle [him] to relief[.]"  *Tinjero-Ortiz*, 635 F.3d at 1105.  Additionally, many of his allegations are either "contradicted by the record," or "inherently incredible," or both.  *Id.*  In particular, review of the record establishes without doubt Movant was not "abandoned" by counsel, but insisted on going forward with his own strategy at the Hearing, which ultimately constituted an unsuccessful attempt to deny responsibility for many of the facts in the GPA.  As Movant has failed to sufficiently allege entitlement to habeas relief, an evidentiary hearing is not required.

### IV. CERTIFICATE OF APPEALABILITY

The Court finds Movant has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue.  *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further

---

[4] For example, in his second ground for relief, Movant simply states, "Had Smith not abandoned her client hours prior to the sentencing, the entire outcome of sentencing would have been different."  [ECF No. 1 at 10].

proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims in Movant's Motion.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Alireza Bakhtiari's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1] is **DENIED.**

**IT IS FURTHER ORDERED** that Movant's Motion for Sanctions for Attorney Misconduct [ECF No. 7] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Movant's Motion.

Dated this  24th   Day of March, 2014.

                                      E. RICHARD WEBBER
                                      SENIOR UNITED STATES DISTRICT JUDGE